2025 IL App (1st) 240062-U

Fourth Division
Filed January 16, 2025

No. 1-24-0062

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DEBBIE MROZ and JOHN MROZ, | ) | |
|     Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of Cook County |
| HINSDALE SURGICAL CENTER, LLC; PAIN | ) | |
| SPECIALISTS OF GREATER CHICAGO, S.C.; | ) | No. 2018 L 008920 |
| and SCOTT McDANIEL, M.D., Individually and | ) | |
| as an Agent of Hinsdale Surgical Center, LLC, | ) | The Honorable Bridget A. Mitchell, |
| and Pain Specialists of Greater Chicago, S.C., | ) | Judge, presiding. |
|     Defendants | ) | |
| (Pain Specialists of Greater Chicago, S.C., and | ) | |
| Scott McDaniel, M.D., Defendants-Appellants). | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*: Even if the trial court erred by restricting plaintiffs' cross-examination of defendants' standard-of-care experts, plaintiffs were not prejudiced because any error did not affect the testimony of defendants' causation expert, which, under the general-verdict rule, was sufficient to support the jury's verdict in favor of defendants.

¶ 2     Plaintiffs, Debbie and John Mroz, sued defendants, Pain Specialists of Greater Chicago, S.C. (Pain Specialists) and Dr. Scott McDaniel, for professional negligence. They alleged that, during a procedure to treat Debbie's back pain, Dr. McDaniel used an ineffective antiseptic, leading Debbie to develop a serious infection that required her to be hospitalized and has a long-term

impact on her quality of life. After trial, a jury returned a general verdict in favor of defendants. Plaintiffs appeal, arguing that the trial court erred by prohibiting them from eliciting that Dr. McDaniel and Dr. Scott Glaser, who was the owner of Pain Specialists, both changed their antiseptic practices following her infection. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In 2016, Debbie Mroz started seeing Dr. McDaniel, a physician employed by Pain Specialists, for treatment of her chronic back pain. On January 19, 2017, Dr. McDaniel performed a procedure to alleviate Debbie's pain known as a nerve radiofrequency ablation (RFA). Because that procedure involved an injection, it called for the use of a topical antiseptic at the injection site. For Debbie's procedure, Dr. McDaniel used Betadine (a brand name for povidone-iodine). About four months later, on May 30, 2017, Debbie went to the hospital for worsening back pain. She reported that the pain had been waxing and waning since January 2017 and that, during the week or two preceding her visit to the hospital, it had become worse. She was admitted to the hospital and diagnosed with a spinal infection—specifically, vertebral osteomyelitis (an infection of the vertebrae) and discitis (an infection of the intervertebral discs)—and a skin abscess. A culture revealed that the infections had been caused by Methicillin-resistant *Staphylococcus aureus* (MRSA).

¶ 5        In August 2018, plaintiffs filed a complaint alleging, in essence, that the selection of Betadine as the antiseptic for Debbie's RFA amounted to professional negligence and had led to her MRSA infection. Debbie sought damages for pain, suffering, disability, loss of normal life, permanent and irreparable harm, and medical expenses arising from the MRSA infection. John sought damages for loss of consortium.[1]

¶ 6        The case proceeded to a jury trial in August 2022. Before trial, defendants filed a motion *in limine* seeking to bar plaintiffs from introducing evidence that, at some point after Debbie's RFA, Dr. McDaniel and Dr. Glaser started using ChloraPrep (a brand name for chlorhexidine) as an

_____

[1]   Plaintiffs' complaint also named as a defendant Hinsdale Surgical Center, which was the site of the procedure. Hinsdale Surgical Center was dismissed with prejudice before trial per the terms of a separate settlement agreement it made with plaintiffs.

antiseptic rather than Betadine. Plaintiffs contended that, because defendants maintained that their adoption of ChloraPrep was for the purpose of avoiding future lawsuits, not because it was more effective, it was not a subsequent remedial measure. The trial court granted defendants' motion *in limine*, finding that, regardless of their reasons for using ChloraPrep, there was "a strong public policy favoring improvements to enhance public safety," that "the prejudice to the Defendants would outweigh any probative value," and that the jury would view the conduct as an admission of negligence. Additionally, the circuit court rejected plaintiffs' contention that " 'subsequent remedial measure' requires that there be some actual remedy—that the change be for a purpose that increased safety, 'whether it's a change in law, a change in circumstances, a change in research about safety, a change in opinions about safety.' "

¶ 7 The record on appeal does not include a complete report of proceedings at trial.[2] It only discloses the testimony of four medical witnesses called by defendants: a standard-of-care expert, a causation expert, and Dr. McDaniel and Dr. Glaser, who both opined as to the standard of care.

¶ 8 Dr. Timothy Deer, an anesthesiologist and interventional-pain physician, testified as defendants' standard-of-care expert. He opined that both Betadine or ChloraPrep were "safe and effective" topical antiseptics and that the use of either would be within the standard of care. He also opined that Dr. McDaniel complied with the standard of care when he ordered the use of Betadine for Debbie's RFA. On cross-examination, Dr. Deer testified that, because ChloraPrep was his "first-line choice" for procedures involving devices and he always had it on hand, it was also his "first choice" for RFA procedures, but he also testified that there was no proof that ChloraPrep was a better choice than Betadine for injections. He added that "[s]ome people use [Betadine] all the time" and that it was an "acceptable" option, even for devices.

¶ 9 Dr. Robert Citronberg, a specialist in infectious diseases, testified as defendants' causation expert. He opined that the RFA procedure did not cause Debbie's MRSA infection. He testified

---

[2] We resolve any doubts that might arise from the incomplete record against plaintiffs-appellants. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

that MRSA "is a very aggressive bacteria" and that infections usually manifested "around a week to two weeks" after the bacteria was introduced into the body, although that period could be as short as "a few days" or as long as a month. As Debbie's infection manifested in May 2017, more than four months after Debbie's RFA in January 2017, it was, in his opinion, "not possible or so remotely possible as not to even be probable in any way" that the infection had been caused by the procedure. Dr. Citronberg also testified that Betadine was at least as effective as ChloraPrep against MRSA and that, in at least 25% of cases of *Staphylococcus aureus* infections in the blood stream, there is "no known etiology or cause."

¶ 10    Dr. McDaniel testified on his own behalf. At the conclusion of his direct examination, he opined that, based on his education, experience, and knowledge of other doctors' practices, using Betadine was within the standard of care for an RFA procedure.

¶ 11    Dr. Glaser, who owned Pain Specialists and identified himself as "an interventional pain management physician," also testified on defendants' behalf. He opined that Dr. McDaniel complied with the standard of care when he used Betadine during Debbie's RFA and that using either Betadine or ChloraPrep as an antiseptic would have been safe, effective, and within the standard of care.

¶ 12    Outside the presence of the jury, plaintiffs made an offer of proof to show the testimony that they would have elicited from Dr. McDaniel and Dr. Glaser about their antiseptic practices at the time of trial. Dr. McDaniel testified that, after being sued in this case, he initially switched to using ChloraPrep as an antiseptic, which he explained as "basically practicing defensive medicine." At some later point, he started using Betadine and ChloraPrep together based on literature stating that Betadine was more effective against MRSA. Dr. Glaser testified that, although he continued to believe that Betadine was safe and effective, after being sued in this case, he stopped using it for RFA procedures as "[p]urely defensive medicine."

¶ 13    The court submitted two verdict forms to the jury. Verdict form A contained a general finding in favor of plaintiffs as to liability followed by specific itemized findings as to damages. Verdict form B contained a general finding in favor of defendants. It does not appear from the record that

either party asked the court to submit special interrogatories to the jury as to specific elements or theories of liability. After deliberations, the jury found in favor of defendants and returned verdict form B, and the court entered judgment on the verdict.

¶ 14        Plaintiffs filed a motion for a new trial arguing that the court had erred by prohibiting them from cross-examining Dr. McDaniel and Dr. Glaser on the changes they made to their antiseptic practices following Debbie's RFA. The court denied the motion, finding that it had "conducted the appropriate analysis" when it granted defendants' motion *in limine* and that, in any event, plaintiffs were not substantially prejudiced because "application of the general verdict rule support[ed] Defendants' contention that the jury relied on Dr. Citronberg's causation testimony in finding for Defendants in this matter." This appeal follows.

¶ 15                                    II.  ANALYSIS

¶ 16        On appeal, plaintiffs argue that the trial court erred when it found that Dr. McDaniel's and Dr. Glaser's adoption of ChloraPrep amounted to a subsequent remedial measure and that, by barring evidence of their switch to ChloraPrep, the trial court unduly limited plaintiffs' right to cross-examine opposing expert witnesses. To resolve this appeal, however, we do not need to consider whether the trial court erred. We find that plaintiffs have not shown that they were prejudiced by the alleged error. See *Both v. Nelson*, 31 Ill. 2d 511, 514 (1964) ("Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed.") *accord Simmons v. Garces*, 198 Ill. 2d 541, 566-67 (2002).

¶ 17        The general verdict rule, also known as the two-issue rule, "provides that a general verdict for the plaintiffs or the defendants without special interrogatories will not be disturbed if the case involved two or more determinative issues, or two or more theories were presented, and there was sufficient evidence to support at least one of the issues or theories that was free from prejudicial error." *Perez v. St. Alexius Medical Center*, 2022 IL App (1st) 181887, ¶ 64. "In other words, where multiple claims, theories, or defenses were raised, a general verdict creates a presumption that the

jury found in favor of the victorious party on every claim, theory, or defense raised." *Id.* Additionally, if multiple theories or defenses are raised, " 'a party must submit special interrogatories to determine whether any error in an alleged erroneous instruction could have affected the verdict' " *Id.* (quoting *Allen v. Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶ 122.

¶ 18    In an action for medical negligence, the plaintiff ultimately must prove two propositions: (1) that the defendant deviated from the applicable standard of care in the medical community and (2) that the defendant's breach of the standard of care proximately caused the plaintiff's injury. *Neade v. Portes*, 193 Ill. 2d 433, 443-44 (2000) (citing *Purtill v. Hess*, 111 Ill. 2d 229, 241-42 (1986)). Here, defendants contested both elements. Three of their expert witnesses, including Dr. McDaniel and Dr. Glaser, testified that Dr. McDaniel's use of Betadine was within the applicable standard of care. But their fourth expert, Dr. Citronberg, opined that, regardless of the standard of care, the aggressive nature of MRSA made it virtually impossible that it would have been introduced during Debbie's RFA procedure only to lay dormant for more than four months before manifesting. Thus, the jury's general verdict in favor of defendants could have been based on either the expert testimony that Dr. McDaniel did not breach the standard of care or Dr. Citronberg's expert testimony that the procedure did not cause Debbie's MRSA infection. See *Perez*, 2022 IL App (1st) 181887, ¶ 66 ("In other words, the jury could have found for [the physician] because it found he did not breach the duty of care, because it found that any breach by [the physician] did not proximately cause [the patient's] death, or both."). Because plaintiffs did not submit any special interrogatories that would have revealed which of those grounds the jury relied on, the general-verdict rule requires us to presume that the jury found in defendants' favor as to both.

¶ 19    That presumption is fatal to plaintiffs' request for a new trial. Their claims of error on appeal all relate to the standard-of-care opinions offered by Dr. McDaniel and Dr. Glaser. While those alleged errors might have affected the jury's determination as to whether Dr. McDaniel's use of Betadine breached the standard of care, they did not affect the jury's evaluation of the evidence as to causation, and Dr. Citronberg's testimony that Debbie's MRSA infection was not the result of

the RFA procedure that had taken place four months earlier provided a sufficient, independent basis for the jury to return a verdict in favor of defendants. Under the general-verdict rule, plaintiffs cannot show that the limits the trial court placed on their ability to cross-examine Dr. McDaniel and Dr. Glaser prejudiced them, so there is no basis for overturning the jury's verdict or the trial court's judgment thereon.

¶ 20                               III.  CONCLUSION

¶ 21        Plaintiffs have not shown that any alleged error in the trial court's limitation of their ability to elicit evidence that defendants' standard-of-care experts used ChloraPrep, despite opining that using Betadine was within the standard of care, resulted in prejudice.

¶ 22        Accordingly, the trial court's judgment is affirmed.

¶ 23        Affirmed.